Fox v. State 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00424-CR







Robert D. Fox, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0930228, HONORABLE LARRY FULLER, JUDGE PRESIDING








 A jury convicted appellant of indecency with a child by contact and exposure and
acquitted appellant of aggravated sexual assault. See Tex. Penal Code Ann. §§ 22.021, 21.11
(West 1994). (1) The jury assessed punishment at seven years' imprisonment on the indecency by
contact count and two years' imprisonment on the indecency by exposure count. Appellant raises
numerous points of error challenging the trial court's judgment of conviction which we will
affirm.



BACKGROUND


 The victim in the instant cause was eleven years old at the time of the offense. Her
mother and stepfather were friends of appellant and his wife. One weekend in June 1991, the
victim spent the night with appellant and his wife at their trailer home. The victim had done so
numerous times in the past, but always with her mother or siblings present. This time she went
alone.

 Appellant's wife works during the evenings. Each of the two nights that appellant's
wife was away at work, appellant sexually molested the victim. Count one of the indictment
alleged that appellant penetrated the victim's vagina with his penis. Count two alleged that
appellant fondled the victim's breasts and genitals. Count three alleged that appellant exposed his
genitals to the victim. Counts one and two also alleged that appellant used a deadly weapon, a
knife, in commission of the offenses. 

 A jury acquitted appellant of count one and convicted him of counts two and three. 
Before reaching a verdict on punishment, the jury sent out three notes to the judge. Note three
read, "We have arrived at a sentence on Count III. We are hopelessly deadlocked on a sentence
for Count II."

 In response to the jury's third note, the trial court gave the jury an Allen or
"dynamite" charge, which read in pertinent part:



 I have your note that you are deadlocked on Count II. In the interest of
justice, if you could end this litigation by your verdict, you should do so. 


* * * * *



 If you fail to reach a verdict, this case may have to be tried before another
jury. Then all of your time will have been wasted.


 Accordingly, I return you to your deliberations.



 The record reveals that neither appellant nor the State objected to the Allen charge. 
In fact, the parties agreed to the court's further instruction to the jury. Having received this
instruction, the jury resumed deliberations, and shortly thereafter announced that they had reached
a verdict. The jury's verdict assessed punishment at seven years' imprisonment on count two and
two years' imprisonment on count three. Appellant lodged no objection to the court's receiving
the jury's verdict.

 At a post-trial hearing, appellant moved for a mistrial on count two. In his motion,
appellant contended that once the jury responded that it had reached a sentencing verdict on count
three, the court should have declared a mistrial on count two because the State was entitled to only
one conviction and one sentence on the indictment. Appellant further alleged that juror
misconduct tainted the jury's deliberations. The trial court overruled appellant's motion and
sentenced him in accordance with the jury's verdict. 



DISCUSSION


 In point of error one, appellant argues that the trial court erred in failing to grant
his motion for mistrial on count two. Specifically, appellant argues that once the jury delivered
its third note indicating that it had decided upon a sentence on count three, the judge should never
have given the jury an Allen charge. Instead, appellant contends, the court should have declared
a mistrial on count two. In support of his contention, appellant cites Ex parte Siller, 686 S.W.2d
617 (Tex. Crim. App. 1985), to argue that the State was entitled to only one conviction and
sentence on the indictment. Therefore, appellant maintains that once the jury reached a verdict
on count three, the State had obtained the one conviction and sentence to which it was entitled.

 In Siller, the defendant was indicted on charges of aggravated sexual assault and
indecency with a child. Upon the jury's verdict, the trial court adjudged appellant guilty on both
counts and assessed punishment at thirty years' imprisonment on the aggravated sexual assault
count and ten years' imprisonment on the indecency with a child count. Citing Drake v. State,
686 S.W.2d 935 (Tex. Crim. App. 1985), overruled on other grounds, Fortune v. State, 745
S.W.2d 364, 370 (Tex. Crim. App. 1988), the Court of Criminal Appeals vacated the indecency
with a child count, holding that the State was entitled to only one conviction and one sentence on
a single indictment. Siller, 686 S.W.2d at 620. Appellant argues that, just as in Siller, the State
was entitled to only one conviction and sentence on the indictment, namely count three.

 Appellant did not challenge the indictment before trial and does not raise a point
of error complaining of misjoinder on appeal. Neither does he challenge the jury's verdict of guilt
on both counts. Instead, he seems to claim that the jury cannot reach a verdict on punishment for
each count separately. We disagree. The jury found appellant guilty on two counts and was
responsible for assessing punishment on each one.

 In any event, appellant misconstrues Siller and Drake in light of subsequent
amendments to the Penal Code. Siller and Drake hold that the State is entitled to only one
conviction and sentence in a single indictment when the multiple counts have been misjoined. 
However, when multiple counts are properly joined, the State can receive multiple convictions and
sentences in a single indictment. See Fortune, 745 S.W.2d at 370; 42 George E. Dix & Robert
O. Dawson, Criminal Practice and Procedure § 32.21 (Texas Practice 1995). 

 The Code of Criminal Procedure provides: "Two or more offenses may be joined
in a single indictment, information, or complaint, with each offense stated in a separate count, if
the offenses arise out of the same criminal episode, as defined in Chapter 3 of the Penal Code." 
Tex. Code Crim. Proc. Ann. art. 21.24(a) (West Supp. 1996) (emphasis added). (2) The version
of the Penal Code in effect at the time the offenses in Siller and Drake were committed provided: 
"`[C]riminal episode' means the repeated commission of any one offense defined in Title 7 of this
code (Offenses Against Property)." Act of June 14, 1973, 63d Leg., R.S., ch. 399, § 1, 1973
Tex. Gen. Laws 891 (amended 1987) (current version at Tex. Penal Code Ann. § 3.01 (West
1994)). Thus, at the time Siller and Drake were decided, joinder of offenses in a single
indictment was proper in only a limited number of scenarios involving certain property crimes. 
 

 However, in 1987 the legislature amended section 3.01 of the Penal Code to
provide:



In this chapter, "criminal episode" means the commission of two or more offenses,
regardless of whether harm is directed toward or inflicted upon more than one
person or item of property, under the following circumstances: 


(1) the offenses are committed pursuant to the same transaction or pursuant to
two or more transactions that are connected or constitute a common scheme
or plan; or


(2) the offenses are the repeated commission of the same or similar offenses.



Act of June 17, 1987, 70th Leg., R.S., ch. 387, § 1, 1987 Tex. Gen. Laws 1900 (amended 1993). 
Thus, the 1987 amendments to the Penal Code substantially expand the scope of permissible
joinder. 

 In a similar case, Nolte v. State, 854 S.W.2d 304 (Tex. App.--Austin 1993, pet.
ref'd), this Court concluded that the State was entitled to more than one conviction on a single
indictment. Id. at 307. In Nolte, the defendant was charged in four indictments with numerous
counts of sexual assault and indecency with a child. The allegations stemmed from incidents
which occurred after the 1987 amendments went into effect. The defendant was convicted on all
counts. Relying on Drake and Siller, the defendant argued that the court should vacate all but one
of the counts on each indictment. Refusing to do so, we noted that, due to the 1987 amendments,
the offenses were properly joined and that, therefore, the "misjoinder remedy" enunciated in
Drake did not apply. Id.; see also Howell v. State, 795 S.W.2d 27, 28 (Tex. App.--El Paso 1990,
pet. ref'd) (when offenses properly joined, state could obtain more than one conviction and
sentence from single indictment). Just as in Nolte and Howell, because the counts lodged against
appellant were properly joined, the State could indeed obtain multiple convictions and sentences
from the single indictment. Therefore, the trial court did not abuse its discretion in declining to
grant a mistrial. See Rousseau v. State, 855 S.W.2d 666, 684 (Tex. Crim. App.), cert. denied,
114 S. Ct. 313 (1993); Elledge v. State, 890 S.W.2d 843, 848 (Tex. App.--Austin 1994, pet. ref'd)
(trial court's decision whether to grant mistrial subject to abuse of discretion standard of review). 
We overrule appellant's first point of error.

 In point of error four, appellant contends that the court erred in giving the jury an
Allen charge which contained a material misstatement of law. Appellant claims that the charge
erroneously instructed the jury that appellant could be tried again. Once more, relying on Siller
and Drake, appellant argues that he cannot be retried because the State has already obtained the
one conviction and sentence to which it was entitled. 

 First, we note that appellant has failed to preserve error on this complaint. To
preserve a complaint for appellate review, a party must have presented to the trial court a timely
request, objection, or motion, stating the specific grounds for the ruling he desired the court to
make. Tex. R. App. P. 52(a); Nolan v. State, 808 S.W.2d 556, 559 (Tex. App.--Austin 1991, no
pet.); see also Briggs v. State, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990). The record reveals
that appellant made no objection to the court giving an Allen charge. Attempting to overcome his
waiver of the complaint, appellant contends that the allegedly erroneous Allen charge constituted
fundamental error, an exception to the general rule requiring preservation of error. See Romo v.
State, 631 S.W.2d 504, 505 (Tex. Crim. App. 1982). We conclude that the Allen charge was not
fundamental error because it did not cause such egregious harm as to undermine the basic fairness
and impartiality of appellant's trial. See Almanza v. State, 686 S.W.2d 157, 171-72 (Tex. Crim.
App. 1984). 

 Additionally, appellant's complaint fails on the merits. As we have already noted
in our discussion under appellant's first point of error, the State is not limited to only one
conviction and sentence on the indictment because the counts were not misjoined. Therefore,
appellant's argument cannot stand. We overrule point of error four.

 In point of error three, appellant contends that the court erred in submitting to the
jury a special issue on count three inquiring whether he used a deadly weapon in commission of
the offense. Counts one and two of the indictment alleged that appellant used a deadly weapon,
a knife, in commission of aggravated sexual assault and indecency with a child by contact. Count
three, however, does not allege that appellant used a deadly weapon in commission of indecency
with a child by exposure. Therefore, appellant argues, the State did not notify him of the
possibility that it might seek a deadly weapon finding on count three.

 In order to seek an affirmative finding that a defendant used a deadly weapon in
the commission of an offense, the State must provide the defendant with notice that a deadly
weapon was used. See Ex parte Patterson, 740 S.W.2d 766, 776 (Tex. Crim. App. 1987),
overruled on other grounds by Ex parte Beck, 769 S.W.2d 525 (Tex. Crim. App. 1989). While
not required, the preferable practice is to place this notice in the indictment itself. Id.

 In Ex parte Grettenberg, 790 S.W.2d 613 (Tex. Crim. App. 1990), the indictment
contained two counts. The first count did not allege the use of a deadly weapon, but the second
count did. The State abandoned count two before trial. The trial court submitted to the jury a
special issue on the use of a deadly weapon. The jury convicted the defendant on count one and
also found that he had used a deadly weapon in commission of the offense. The Court of Criminal
Appeals held that even though count one did not allege use of a deadly weapon, the pleading in
count two adequately notified the defendant that the State might possibly seek a deadly weapon
finding. Id. at 615. In the instant cause, we find likewise that the indictment, taken as a whole,
notified appellant that the State might seek a deadly weapon finding. We overrule point of error
three.

 In point of error two, appellant complains that the evidence was legally insufficient
to support the finding that he used a deadly weapon in commission of the charged offenses. A
"deadly" weapon is any weapon which, in the manner of its actual or intended use, is capable of
causing death or serious bodily injury. Tex. Penal Code Ann. § 1.07(17) (West 1994). The
indictment alleged that appellant used a knife. A knife is not a deadly weapon per se. However,
the State can, without expert evidence, prove any particular knife to be a deadly weapon by
showing its size, shape and sharpness, the manner of its use, or intended use, and its capacity to
produce death or serious bodily injury. See Blain v. State, 647 S.W.2d 293, 294 (Tex. Crim.
App. 1983). Appellant contends that because there was no evidence as to the length of the knife's
blade, the evidence was insufficient to find that the knife was a deadly weapon.

 Appellate review of the legal sufficiency of the evidence is limited to determining
whether, viewing the evidence in the light most favorable to the jury's verdict, a rational trier of
fact could have found beyond a reasonable doubt the essential elements of the charged offense. 
Jackson v. Virginia, 443 U.S. 307, 309 (1979); Villalon v. State, 791 S.W.2d 130, 132 (Tex.
Crim. App. 1990). The standard of review is the same in both circumstantial and direct evidence
cases. Geesa v. State, 820 S.W.2d 154, 161 (Tex. Crim. App. 1991). The jury is the trier of
fact and the exclusive judge of the credibility of the witnesses and the weight to be given their
testimony. Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979). The jury is free to accept or
reject all or any part of the evidence presented by either party. See Saxton v. State, 804 S.W.2d
910, 914 (Tex. Crim. App. 1991). The appellate court must consider all the evidence admitted. 
Nickerson v. State, 810 S.W.2d 398, 400 (Tex. Crim. App. 1991). It is not the reviewing court's
duty to disregard, realign, or weigh the evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.
Crim. App. 1988). 

 The victim described the knife as a pocket knife six to eight inches long when open. 
She further testified that appellant placed the open knife to her throat and threatened to kill her
if she revealed his abuse. Detective Jesse Carter of the Travis County Sheriff's Office also
testified as to the deadly nature of the knife. Carter testified that, based on his experience and
training, a six-inch pocket knife held up to a victim's throat is capable of causing death or serious
bodily injury. 

 Appellant argues that Carter never saw the knife in question and that the victim
described the length of the entire knife, not the blade's length. Therefore, appellant argues that,
in the absence of any evidence of the blade's length, there is no evidence to support a deadly
weapon finding. See Blain, 647 S.W.2d at 294. Appellant misconstrues the holding in Blain as
well as the victim's testimony. The court in Blain stated that blade length is but one manner in
which the State may prove a knife's deadliness. Id. Furthermore, in the instant cause, the victim
testified that the "knife" was six to eight inches long when open. Viewing all the evidence in the
light most favorable to the verdict, we hold that the evidence is sufficient for a rational trier of
fact to have found that the knife was a deadly weapon. We overrule point of error two.

 In point of error five, appellant claims that he was denied a fair trial because one
juror withheld information during voir dire that she had been sexually abused as a child. 
Appellant apprised the trial court of his claims of juror misconduct with a motion for mistrial
accompanied by affidavits from two jurors. Other than the juror affidavits, the court received no
evidence on appellant's motion for mistrial. 

 The voir dire process is designed to insure, to the fullest extent possible, that an
intelligent, alert, disinterested, impartial, and truthful jury will perform the duty assigned to it. 
When a juror withholds material information in the voir dire process, the parties are denied the
opportunity to exercise their challenges, thus hampering their selection of a disinterested and
impartial jury. However, the attorneys have an obligation to ask questions calculated to elicit
information which might reveal a juror's inability to be truthful and impartial. Unless the court
or the attorneys ask such questions, the material information which a juror fails to disclose is not
really "withheld." Armstrong v. State, 897 S.W.2d 361, 363-64 (Tex. Crim. App. 1995)
(citations omitted). Therefore, a defendant is entitled to a reversal because a juror withheld
information only when (1) the omission is material, and (2) the attorneys exercised due diligence
in seeking to elicit the information. Jones v. State, 596 S.W.2d 134, 137 (Tex. Crim. App.
1980). 

 In Armstrong, the venire panel was asked whether anyone knew the prosecuting
attorney to the extent that he or she could not be impartial. The venire was also asked whether
they knew any of the prosecuting attorney's staff. It was later discovered that a seated juror was
extremely well acquainted with the prosecuting attorney. In fact, her husband had served as best
man during his wedding and twice as treasurer for his reelection campaign. The appellant
complained that his trial was prejudiced because the juror withheld material information. The
Court of Criminal Appeals held that, notwithstanding the information's materiality, the juror had
not withheld information because she was never asked simply whether she knew the prosecuting
attorney. Instead, she was asked whether she knew him to the extent that it could compromise
her impartiality and whether she knew any of his staff. Accordingly, the Court of Criminal
Appeals affirmed the conviction. See Armstrong, 897 S.W.2d at 362-364. 

 Likewise, in the instant cause, a review of the record reveals that the venire was
never asked whether any member had been sexually abused. Instead, the prosecution asked,
"How many of you have had someone tell you that they were sexually abused," and the defense
asked whether the jurors could be impartial. The objectionable juror was only asked whether
someone else had told her about an instance of sexual abuse, not whether she herself had been
abused. Because the juror was never asked whether she had been abused, the holding in
Armstrong instructs that the appellant is not entitled to a reversal on these grounds. Therefore,
the trial court did not abuse its discretion in failing to grant appellant's motion for mistrial. We
overrule point of error five.

 In point of error six, appellant complains that he was denied a fair trial because the
jury received extraneous evidence during deliberations. According to the affidavits of two jurors,
the juror complained of in point of error five revealed to her colleagues during deliberation that
she had been sexually abused as a child. She also stated, in general terms, that victims of sexual
abuse suffer emotional as well as physical injury and experience prolonged adverse psychological
effects.

 The rules of appellate procedure provide that a new trial shall be granted, "Where
after retiring to deliberate the jury has received other evidence . . ." Tex. R. App. P. 30(b)(7). 
In order to compel a new trial, the extraneous evidence must be (1) received by the jury, and (2)
detrimental to the defendant. Avalos v. State, 850 S.W.2d 781, 783 (Tex. App.--Houston [14th
Dist.] 1993, no pet.); Martinez v. State, 846 S.W.2d 348, 350 (Tex. App.--Corpus Christi 1992,
pet. ref'd). A passing remark or mere mention of a matter does not constitute "receipt" of other
evidence. Avalos, 850 S.W.2d at 783; Martinez, 846 S.W.2d at 350. In the instant cause we
must decide whether the juror's revelation of her sexual abuse and her comments that sexual abuse
victims suffer prolonged emotional injury constitute "other evidence" for purposes of Rule
30(b)(7). We conclude they do not.

 Jurors may draw on their general experiences and perceptions while deliberating. 
Guice v. State, 900 S.W.2d 387, 390 (Tex. App.--Texarkana 1995, no pet.); Carter v. State, 753
S.W.2d 432, 438 (Tex. App.--Corpus Christi 1988, pet. ref'd). The juror's comments concerned
nothing unique about the instant prosecution. Rather, they were general statements about the
effects of sexual abuse derived from her life experiences. Moreover, the juror's observations
were essentially common knowledge; one need not be the victim of sexual abuse to deduce that
victims can suffer prolonged emotional injury. We hold that the juror's statements did not
constitute "other evidence" as contemplated by Rule 30(b)(7). Therefore, we cannot say that the
trial court abused its discretion in overruling appellant's motion for mistrial. We overrule point
of error six.

 In point of error seven, appellant complains that he was denied a fair trial when one
juror made a material misstatement of the law during jury deliberations. According to the
affidavits of two jurors, one juror switched her vote during punishment deliberations when another
juror misrepresented that, if they could not reach a verdict, appellant could be retried on the
charge for which he was acquitted.

 Appellant correctly observes that once the court accepted the verdict, double
jeopardy would bar prosecution of the count on which he was acquitted. United States v. Halper,
490 U.S. 435, 440 (1989) (double jeopardy bars second prosecution for same offense after
acquittal). However, every misstatement of law made in the jury room does not warrant reversing
a conviction. In Sneed v. State, 670 S.W.2d 262 (Tex. Crim. App. 1984), the Court of Criminal
Appeals articulated the standard under Rule 30 for evaluating the effects of a juror's
misrepresentation of parole law. Id. at 266; see also Buentello v. State, 826 S.W.2d 610, 614
(Tex. Crim. App. 1992) (Sneed test survives under the current rules of evidence). Narrowly read,
the Sneed test applies only to juror misconduct involving improper discussion of parole law. 
However, use of the Sneed test has been expanded to other juror misstatement of law cases as
well. Rasbury v. State, 832 S.W.2d 398, 402 (Tex. App.--Fort Worth 1992, pet. ref'd) (applying
Sneed test to juror misstatement of self-defense law). 

 Even applying Sneed, to constitute reversible error the jury's discussion must
include (1) a misstatement of the law; (2) asserted as fact; (3) by one professing to know the law;
(4) which is relied upon by other jurors; (5) who for that reason changed their vote to a harsher
punishment. Sneed, 670 S.W.2d at 266. In the instant cause, one juror misrepresented that
appellant could be retried on the acquitted charge, and another juror changed her vote to
appellant's detriment as a result. Therefore, according to the juror affidavits, several elements
of the Sneed test were established.

 Element three, however, was not established. According to the juror affidavits, 
the juror misstating the law did not profess to have any special knowledge of the law. She did
not claim to have had any legal training or any life experiences which would make her aware of
the law through its practical application. See e.g. Stanton v. State, 747 S.W.2d 914, 922-25.
(Tex. App.--Dallas 1988, pet. ref'd) (no juror testified to having special legal training or other life
experiences indicating knowledge of law). In short, the juror's knowledge of the law came from
exactly the same source as the juror who switched her vote: the judge's instruction. Because the
juror did not profess to have any special knowledge of the law, appellant has failed to establish
the third element of the Sneed test. Therefore, the trial court did not abuse its discretion in
overruling appellant's motion for mistrial. We overrule point of error seven.



CONCLUSION


 Having overruled all of appellant's points of error, we affirm the trial court's
judgment of conviction.



 Marilyn Aboussie, Justice

Before Chief Justice Carroll, Justices Aboussie and Kidd

Affirmed

Filed: May 29, 1996

Do Not Publish

1.   These offenses took place before September 1, 1994 and are governed by the law in
effect at the time they occurred. Because the code amendments effective September 1,
1994 have no substantive effect on these offenses, we cite the current code for
convenience.
2.   This version of the statute was in effect during the commission of the offense in the
instant cause, as well as those in Siller and Drake.


Therefore, we cannot say that the
trial court abused its discretion in overruling appellant's motion for mistrial. We overrule point
of error six.

 In point of error seven, appellant complains that he was denied a fair trial when one
juror made a material misstatement of the law during jury deliberations. According to the
affidavits of two jurors, one juror switched her vote during punishment deliberations when another
juror misrepresented that, if they could not reach a verdict, appellant could be retried on the
charge for which he was acquitted.

 Appellant correctly observes that once the court accepted the verdict, double
jeopardy would bar prosecution of the count on which he was acquitted. United States v. Halper,
490 U.S. 435, 440 (1989) (double jeopardy bars second prosecution for same offense after
acquittal). However, every misstatement of law made in the jury room does not warrant reversing
a conviction. In Sneed v. State, 670 S.W.2d 262 (Tex. Crim. App. 1984), the Court of Criminal
Appeals articulated the standard under Rule 30 for evaluating the effects of a juror's
misrepresentation of parole law. Id. at 266; see also Buentello v. State, 826 S.W.2d 610, 614
(Tex. Crim. App. 1992) (Sneed test survives under the current rules of evidence). Narrowly read,
the Sneed test applies only to juror misconduct involving improper discussion of parole law. 
However, use of the Sneed test has been expanded to other juror misstatement of law cases as
well. Rasbury v. State, 832 S.W.2d 398, 402 (Tex. App.--Fort Worth 1992, pet. ref'd) (applying
Sneed test to juror misstatement of self-defense law). 

 Even applying Sneed, to constitute reversible error the jury's discussion must
include (1) a misstatement of the law; (2) asserted as fact; (3) by one professing to know the law;
(4) which is relied upon by other jurors; (5) who for that reason changed their vote to a harsher
punishment. Sneed, 670 S.W.2d at 266. In the instant cause, one juror misrepresented that
appellant could be retried on the acquitted charge, and another juror changed her vote to
appellant's detriment as a result. Therefore, according to the juror affidavits, several elements
of the Sneed test were established.

 Element three, however, was not established. According to the juror affidavits, 
the juror misstating the law did not profess to have any special knowledge of the law. She did
not claim to have had any legal training or any life experiences which would make her aware of
the law through its practical application. See e.g. Stanton v. State, 747 S.W.2d 914, 922-25.
(Tex. App.--Dallas 1988, pet.